# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:23-mj-91 |
| | ) | |
| MOHAMMED CHHIPA, | ) | |
| | ) | |
| Defendant. | ) | |

## **DEFENDANT'S MOTION TO REVOKE DETENTION ORDER**

The Defendant, Mohammed Chippa, by counsel, and pursuant to 18 U.S.C. § 3145(b), respectfully requests that the Court revoke the order of detention imposed by the magistrate judge on May 10, 2023.

Mr. Chhipa has no prior criminal record of any kind. After immigrating with his family to the United States from India 29 years ago, at age 4, he has lived, attended school and worked in Northern Virginia. At the time of his recent arrest, he had professional employment in the field of Information Technology and was financially supporting his parents, with whom he resided. While there is no dispute that that allegations against Mr. Chhipa contained in the Criminal Complaint give rise to a statutory presumption under 18 U.S.C. § 3142(e)(3), the government's decision to wait more than 15 months since the last activity alleged in the Affidavit in Support of Criminal Complaint to charge this case directly undermines the claim that Mr. Chhipa presents a serious risk of danger to the community. Indeed, any argument that release pending trial poses an unacceptable danger to the community would also suggest that the government placed the community at risk by waiting to

arrest and charge Mr. Chhipa for more than a year after it had all of the necessary information to do so.

With respect to flight risk, conditions of release exist—namely, electronic monitoring, home detention, restrictions on the use of electronics, and a secured bond signed by his brother—that will reasonably assure Mr. Chhipa's appearance at future court proceedings. As already noted, Mr. Chhipa has no prior record of any sort, and obviously no history of failing to appear at court proceedings. Moreover, the evidence the government has put forward to suggest a risk of flight involves Mr. Chhipa leaving the country when he was under absolutely no obligation to stay.

## **ARGUMENT**

### I. Legal Standard

Pursuant to 18 U.S.C. § 3145(b), this Court may revoke a detention order issued by a magistrate judge upon motion by the defense. The district judge's review of a magistrate judge's detention order is *de novo*. *See United States v. Clark*, 865 F.2d 1433, 1437 (4th Cir. 1989). The district court must make its own *de novo* determination of the facts with no deference to the findings of the magistrate judge. *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990); *United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987); *United States v. Walters*, 89 F.Supp.2d 1217, 1219-20 (D. Kan. 2000). In addition, the district court ultimately must decide the propriety of detention with no deference to the legal conclusions of the magistrate judge. *Id.*

It is well-settled that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act of 1984 therefore provides that a defendant must be released on their personal recognizance or an unsecured personal bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b); *accord United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

Even in the context of a statutory presumption case, the defendant only has a burden of production to come forward with "some evidence" to contradict the presumption that no conditions exist that will reasonably assure the safety of the community and reasonably assure the defendant's appearance. *See United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *accord United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("As our sister circuits have found, section 3142(e)(3)'s presumption in favor of detention imposes only a 'burden of production' on the defendant, and the government retains the 'burden of persuasion.').

This burden of production "is not a heavy one to meet." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). The defendant simply has the burden to produce evidence "to suggest" that he is neither dangerous nor likely to flee if released on bail. *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990). The burden of production is merely "to offer some credible evidence contrary to the statutory presumption." *United States v. Miller*, 625 F.Supp. 513, 519 (D. Kan. 1985).

"Any evidence" favorable to a defendant that comes within a category listed in 18 U.S.C. §3142(g) can rebut the presumption, including evidence of the person's character, mental condition, employment, financial resources, length of residence in the community, community ties, past conduct, prior history related to drug or alcohol abuse, criminal history, and nature and seriousness of the danger that would be posed by the person's release. 18 U.S.C. § 3142(g)(3); *United States v. Dominguez*, 783 F.2d at 707. Where the defendant has presented considerable evidence of his longstanding ties to the locality in which he faces trial, courts have found that the presumption has been rebutted. *See, e.g., United States v. Jackson*, 845 F.2d 1262, 1266 (5th Cir. 1988).

Although the statutory presumption under 18 U.S.C. §3142(e) shifts the burden of "production" to the defendant, the "burden of persuasion" as to the issue of detention remains with the government. *See Quartermaine*, 913 F.2d at 916; *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008); *United States v. Walters*, 89 F.Supp.2d at 1220; 3B Wright & Miller, *Federal Practice & Procedure* § 765.1. Specifically, the government must still prove dangerousness by "clear and convincing" evidence and/or must prove risk of flight by a "preponderance of the evidence." *See United States v. King*, 849 F.2d 485, 489 (11th Cir. 1988); 18 U.S.C. §3142(f).

If the defendant proffers evidence to rebut the presumption, the court must consider four factors in determining whether the government has met its burden of persuasion regarding pretrial detention. This requires the Court to evaluate (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature

and seriousness of the danger to the community that would be posed by the person's release. 18 U.S.C. § 3142(g). *See Hir*, 517 F.3d at 1086; *Jackson*, 845 F.2d at 1265.

In meeting its burden, the government cannot simply argue that the statutory presumption, coupled with the allegations in the charging document, are alone sufficient to satisfy section 3142(g). *United States v. Jackson*, 845 F.2d at 1266. The government is required to support its request for pretrial detention by offering extrinsic evidence. *Id*. Moreover, the "presumption itself would be inadequate to prove dangerousness, so the prosecution must introduce other evidence in addition." *United States v. Cox*, 635 F.Supp. 1047, 1052 (D. Kan. 1986). Thus, when the presumption is preliminarily rebutted, it is improper to base a finding of dangerousness solely on the presumption. *Dominguez*, 783 F.2d at 707.

Even if the presumption of dangerousness to the community exists under 18 U.S.C. § 3142(e), the defendant cannot be detained unless the government proves, and the court finds, that there are no release conditions that will "reasonably assure" the safety of the community. *See Hir*, 517 F.3d at 1092; *Dominguez*, 783 F.2d at 707. With respect to flight risk, the government must show inclination to flee, as opposed to the mere opportunity, in order to support pretrial detention. *See Truong Dinh Hung v. United States*, 439 U.S. 1326, 1329 (1978).

## II. Release Conditions Exist That Will Reasonably Assure The Safety of The Community and Mr. Chhipa's Appearance

Mr. Chhipa seeks pretrial release to the residence that he shares with his parents, under strict conditions, including home detention, electronic monitoring,

computer monitoring, and a secured bond signed by his brother.[1] Such conditions are fully sufficient to reasonably assure both Mr. Chhipa's appearance at future court proceedings and the safety of the community.

As noted in the pretrial services report, Mr. Chhipa is 33 years old and has lived with his family in Northern Virginia since he immigrated to the United States from India as a young boy. He has no prior criminal record whatsoever. He has strong family ties here—his parents and all three of his siblings—and minimal ties outside the country (he has uncles and cousins who continue to reside in India, but Mr. Chhipa has not returned there since coming to the United States 29 years ago). He also has maintained stable employment, working in the same position in the Information Technology field for about two years.

Despite these strong ties to the community and Mr. Chhipa's lack of any prior record whatsoever, the government relies largely on his decision to leave the United States in 2019, following an FBI raid at his home at a time when he was neither under arrest nor the subject of an arrest warrant, as an indicator that he is a risk of flight. To be sure, Mr. Chhipa *did* wish to leave the United States at that time and in fact did so—between being on a "no fly" list for nearly his entire adult life, and having his home searched in 2019, he no longer wished to remain in the United

---

[1] As noted in the Pretrial Services Report, the current residence that Mr. Chhipa shares with his parents is leased by his brother. At the time of the detention hearing, undersigned counsel informed the magistrate judge that his brother had confirmed to counsel that he would permit Mr. Chhipa to return to this residence. Mr. Chhipa's brother also informed counsel that he is willing to sign a surety bond on behalf of Mr. Chhipa.

States, and chose to leave, as was his right. Nonetheless, even though he was not wanted for a crime, the United States government considered him a person of interest, and on that basis sought the assistance of foreign governments to return him to the United States, which they did when he attempted to fly to Europe on his own United States passport. That passport—which is Mr. Chhipa's only travel document—is now in the possession of the United States. It has now been nearly four years since Mr. Chhipa's travel outside of the United States. Since that time, he has made no further attempt to leave the country.

Certainly this prior travel is relevant to the Court's detention analysis. But in these circumstances—where the travel did not constitute "flight" because it was entirely lawful; where it occurred four years ago and has not been repeated; where Mr. Chhipa has no prior record of any sort; and where Mr. Chhipa no longer possesses any international travel documents—Mr. Chhipa's travel outside the United States in 2019 is insufficient to find that he presents a serious risk of flight now, and certainly not one that cannot be mitigated by conditions of release.

With respect to the safety of the community, the government's contention that Mr. Chhipa presents a risk of danger should he be released on conditions is inconsistent with its own approach to this prosecution. As the Affidavit in Support of Criminal Complaint makes clear, the United States has been investigating Mr. Chhipa for years, and it has had all the information necessary to arrest and charge him in this case for at least the last 15 months (the last conduct described in the Affidavit occurred in January 2022). Yet the government did not charge Mr. Chippa

until this month, leaving him in the community for well over a year – time during which he had unfettered access to computers and the internet.

Should Mr. Chhipa be released now that he has been charged, he could (and would) be subjected to both supervision by the pretrial services office and significant restrictions on his freedom, any violation of which could result in his incarceration. In these circumstances, the government has not established by clear and convincing evidence that Mr. Chhipa's release, subject to pretrial supervision with conditions including home confinement, electronic monitoring and limitations on his ability to use computers, would pose a danger to the community.

### III. The Nature of the Charged Offenses Do Not Require Detention

The Affidavit in Support of Criminal Complaint alleges that Mr. Chhipa provided material support to ISIS by sending money principally to women held in the Al-Hol refugee camp in Syria, some of whom were widows of ISIS fighters and were later smuggled out of the camp. According to the government's allegations, only a small portion of the money was directed towards ISIS fighters.

While these allegations are undoubtedly serious, the allegation alone do not warrant a finding that no reasonable conditions of release exist in this case. Indeed, defendants facing similar charges with no prior criminal record have been released pending trial. For example, in *United States v. Muna Osman Jama, et al.*, 1:14-cr-230 (AJT), a case involving charges of conspiracy to provide material support to Al-Shabaab, the defendants, including the two lead defendants, were released on various pretrial conditions, including home detention with electronic monitoring, no access to

-8-

the internet, computer monitoring and a prohibition against transferring money overseas. *See id.*, ECF 24, Unsecured Bond for defendant Jama; ECF 26, Order of Release for defendant Dhirane.

Setting similar conditions of release for Mr. Chhipa, as well as a secured bond signed by his brother, will reasonably assure the safety of the community and his appearance at future court dates.

WHEREFORE, Mr. Chhipa respectfully requests that this Court authorize his release on conditions pursuant to 18 U.S.C. § 3142(c).

    Respectfully submitted,

    MOHAMMED CHHIPA

    By Counsel,

    _____/s/_____
Shannon S. Quill
Va. Bar No. 76355
Todd M. Richman
Va. Bar No. 41834
Assistant Federal Public Defenders
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0800
Facsimile: (703) 600-0880
Shannon_Quill@fd.org