IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. 1:23-cr-97 |
| | ) |
| MOHAMMED CHHIPA, | ) |
| Defendant. | ) |

## ORDER

In this criminal proceeding, Defendant Mohammed Chhipa is charged in the indictment with five counts of conspiring to provide, providing, and attempting to provide material support or resources to a designated foreign terrorist organization, namely, the Islamic State in Iraq and Syria ("ISIS"). The indictment alleges that defendant has supplied ISIS with over $188,000.00 through clandestine means, including Virtual Private Networks ("VPNs") and encrypted messaging services. No party disputes that, when defendant learned he was under investigation, he developed a covert plan to flee the United States and travel to Egypt. Defendant executed his plan and made it all the way to Panama. And no party disputes that, when defendant's arrest was imminent, he received tips from someone with an international phone number for countersurveillance techniques and withdrew $8,000.00 in cash from his bank account. Based on these facts, the magistrate judge ordered that defendant remain in detention pending trial.

Defendant now seeks revocation of the magistrate judge's detention order. Despite defendant's demonstrated ability to evade law enforcement and to flee the country when he perceives the risk of arrest, defendant argues that he is not a flight risk and that he poses no danger to the community. Because the facts demonstrate that defendant is both a flight risk and a danger to the community, defendant's motion must be denied.

1

**I.**

The facts that follow are derived from the criminal complaint, the indictment, and the government's proffers. Although the parties did not produce the testimony of any witnesses at the detention hearing, the Fourth Circuit has made clear that "[e]videntiary proffers," such as those made in a brief or at oral argument, are sufficient for pretrial-detention purposes under 18 U.S.C. § 3142(f). *United States v. Williams*, 753 F.2d 329, 331 n.7 (4th Cir. 1985). Indeed, the relevant statutory language provides that "rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information" for pretrial detention purposes. 18 U.S.C. § 3142(f). In any event, the parties do not dispute that the relevant, operative facts *at this stage* are those charged in the indictment and those proffered by the parties. Thus, the relevant facts for this motion are as stated below.

- Starting sometime in 2019 at the latest, defendant sent money to female ISIS members with the purpose of benefiting ISIS in various ways, including by financing the escape of female ISIS members from prison camps and supporting ISIS fighters.

- To transfer money to ISIS, defendant sent cryptocurrency to couriers in Turkey, who would exchange the cryptocurrency for cash and secretly smuggle that cash to Syria with no trace.

- In total, between 2019 and 2022, defendant transferred over $188,000.00 to ISIS members.

- Defendant used covert means to transfer this large sum of money to ISIS. Defendant sent the money in cryptocurrency, a difficult-to-trace form of money. Defendant used VPNs to mask his home IP address. Defendant bought multiple phones with removable batteries to ensure he was not being monitored. And defendant downloaded fake numbers and used encrypted messaging applications to hide his messages and ensure that his messages were untraceable.

- Pursuant to a search warrant, the Federal Bureau of Investigation ("FBI") searched defendant's home on August 2, 2019. That night, while the FBI was searching defendant's home, defendant drove to his bank—Apple Federal Credit Union—and withdrew $1,800.00 in cash from the ATM. Defendant then left his car in the parking lot of a local Taco Bell. After getting rides from a stranger and a relative to a bus carrier, defendant purchased various bus tickets with alias email accounts containing slight misspellings of his name. These bus tickets would take defendant from Virginia, through Mexico, to

Guatemala. Defendant then purchased one-way tickets to fly from Guatemala to Panama, Panama to Germany, and Germany to Egypt.

- Defendant's plan to escape the United States was almost successful. Defendant made it to Panama before he was returned to the United States.

- After defendant's return to the United States, defendant remained under investigation for several years. In that time, the FBI searched, pursuant to search warrants, several of defendant's social media accounts and electronic communication devices. Through those searches, the FBI discovered that defendant stated that he fled the country because he assumed that he would be arrested when the FBI searched his house.

- In late April 2023, as the FBI prepared to arrest defendant, the FBI placed defendant under more-constant surveillance. When defendant spotted the surveillance, he sent text messages to unidentified persons stating "[t]he FBI are following me" and stating that he needed to delete encrypted accounts. Additionally, defendant then engaged in erratic driving behavior, to evade surveillance. Also, defendant had an encrypted-message conversation with someone with a Germany-based number, in which defendant received tips for conducting countersurveillance techniques.

- The next month, on May 2, 2023, defendant withdrew $8,000.00 in cash from his bank account.

- Defendant was arrested on May 4, 2023.

- After defendant was arrested, the FBI discovered that the defendant not only possessed videos, pictures, and notes about jihad and ISIS, but that defendant possessed bomb-making instructions and expressed a desire to die a martyr.

## II.

Whether a defendant should be detained before trial is governed by the Bail Reform Act, 18 U.S.C. § 3141 *et seq.* Under the Bail Reform Act, a defendant must be detained pretrial if "no condition or combination of conditions would reasonable assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Because both conditions must be satisfied for pretrial release to be warranted, a defendant must be detained if he is *either* a flight risk or a danger to the community.

Where, as here, a defendant is charged with a federal crime of terrorism, there is a rebuttable presumption that detention is necessary because no condition or combination of

3

conditions of release will prevent defendant's flight and ensure the safety of the community.[1] The Fourth Circuit has made clear that in such presumption cases, the government "does not bear the burden of proof," and instead, there is a "flip of the burden" to the defendant. *Miranda v. Garland*, 34 F.4th 338, 363 (4th Cir. 2022).

The Bail Reform Act catalogs the factors relevant to determining whether pretrial detention is appropriate. Those factors are (1) "the nature and circumstances of the offense charged, including whether the offense is a . . . crime of terrorism"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person," including the person's character, financial resources, family ties, and past conduct; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). If those factors support a finding by the preponderance of the evidence that the defendant is a flight risk, then the defendant must be detained. *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001). Moreover, if those factors support a finding by clear and convincing evidence that the defendant poses a risk to some other person or the community, then the defendant must be detained. 18 U.S.C. § 3142(f). As explained below, each of those four factors applied here lead to the conclusion that defendant is a flight risk and a danger to the community.

The first factor—the nature and circumstances of the offenses charged—plainly weighs in favor of pretrial detention. Defendant here is charged with five counts of federal terrorism offenses. Federal terrorism offenses are so dangerous that Congress specifically listed them as an example of offenses that weighs in favor of pretrial detention. *See* 18 U.S.C. § 3142(g)(1)

---

[1] 18 U.S.C. § 3142(e)(3)(C) provides that "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense listed in section 2332b(g)(5)(B) of title 18, United States Code," one of which is a "[f]ederal crime of terrorism." 18 U.S.C. § 2332b(g)(5)(B). Thus, the Bail Reform Act provides that a defendant charged with a terrorism offense should presumptively be detained before trial.

(specifically noting that federal terrorism crimes are to be considered as dangerous as crimes of violence, crimes involving firearms, and crimes involving minor victims). Indeed, defendant's specific alleged conduct of sending money to ISIS is of key significance to ISIS's operations; a terrorist organization cannot operate without funding. Given this, the Supreme Court and Congress made clear that terrorist organizations "are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 29 (2010) (citation omitted). Moreover, home detention is particularly unsuitable in this case considering that defendant committed much of the crimes from his home and, indeed, defendant even returned to his criminal conduct even after the FBI searched his residence. And defendant's use of covert means to give money to ISIS, such as VPNs and encrypted messaging, suggests that it would be difficult to prevent defendant from continuing to commit his crimes if he is allowed free on bond.

Defendant argues that the length of time between the government's awareness of defendant's criminal conduct and defendant's arrest contradicts the government's argument that defendant is dangerous. This argument fails and has been rejected by several courts. In *United States v. Drake*, the district court concluded that a three-year delay between the execution of a search warrant and a defendant's arrest does not make a defendant any less dangerous than the facts suggest. 2023 WL 213917 at *2 (W.D. Va. Jan. 12, 2023). Similarly, another district court made clear that the government "is permitted to make its own determinations on when to indict a defendant and without evidence of abuse or some facts to support that the delay was due to a lack of danger, the delay does not affect the detention analysis." *United States v. Little*, 235 F. Supp. 3d 272, 279 (D.D.C. 2017). In sum, defendant's argument that this factor supports a finding that defendant is not a danger to the community and warrants pretrial release is meritless.

The second factor—the weight of the evidence against defendant—also points persuasively to pretrial detention. In this regard, the government has proffered that there is substantial evidence of defendant's guilt, including (i) recorded conversations with FBI agents and confidential sources; (ii) documentary evidence of defendant's support of ISIS through financial records and statements obtained from social media companies; and (iii) other electronic evidence against the defendant. Thus, it is clear that the weight of the evidence against defendant for the crimes alleged in the indictment is more than strong enough to support pretrial detention.

The third factor—defendant's history and characteristics—also points persuasively to pretrial detention in this case. In this regard, defendant fled the country earlier when he thought he faced prosecution and used covert means to do so. Specifically, when the FBI searched defendant's home in 2019, defendant executed his plan to evade arrest and to flee the country. Defendant initiated his plan by securing funds when he withdrew $1,800.00 from his bank. Next, defendant abandoned his car in the parking lot of a Taco Bell and got rides from a stranger and a relative to a bus company. There, the defendant purchased bus tickets from Virginia to Mexico and from Mexico to Guatemala. In doing so, defendant made sure that he slightly misspelled his name, so as not to trigger any FBI or law enforcement alerts. Defendant then purchased flight tickets from Guatemala to Panama, Panama to Germany, and Germany to Egypt. Defendant was eventually returned from Panama, and later communicated to others via encrypted message that he was leaving the country because he thought an arrest was imminent. Defendant's conduct clearly demonstrates that defendant made a plan to flee and partially executed that plan.

Several years later, defendant again engaged in evasive and avoidant behavior indicating a willingness to flee. In 2023, when the FBI was preparing to arrest the defendant and accordingly increased surveillance, defendant drove erratically to evade that FBI surveillance and told others

via encrypted message that he needed to start deleting encrypted accounts. The defendant also withdrew $8,000.00 before he was finally arrested. Defendant's repeated engagement in evasive conduct when he perceives a law enforcement presence and reliance on sophisticated technologies and other people demonstrates that no condition or combination of conditions can prevent his flight.

Together, these facts show that when defendant perceives that he is in trouble, he tries to flee. Indeed, he made it out of the United States the first time he thought he was under arrest. And right before he was placed under arrest, defendant withdrew $8,000.00, suggesting he was considering fleeing again. Moreover, defendant has demonstrated that he has a sophisticated means of evading surveillance and resources and contacts upon which to draw support to evade supervision. The first time that defendant tried to flee, he used slightly changed names for bus and plane tickets. These efforts likely allowed him to evade law-enforcement detection while still boarding busses and planes by telling the boarding agents that his identification had a slightly different name from his ticket because of a mere typo.

Seeking to avoid this conclusion, defendant argues that he was entitled to leave the United States but this argument is irrelevant and unpersuasive. His behavior in leaving the United States is relevant not because it was unlawful, but rather because it shows that defendant is likely to leave when he is in trouble with the law. As one district judge concluded, the fact that a defendant leaves the country "by the usual, legal means does not diminish the persuasiveness of [a] trip's extremely suspicious timing." *United States v. Umali*, 2016 WL 324708, at *4 (E.D. Va. Jan. 27, 2016). Here, the relevant fact is that defendant attempted to leave when he thought he would be arrested. Lawful or not, defendant's past flight suggests that he will flee again given the opportunity, and thus counsels against pretrial release.

Moreover, defendant's attempt to analogize this case to *United States v. Muna Osman Jama, et al.*, No. 1:14-cr-230 (E.D. Va. July 25, 2014), fails. There, two of the defendants were released under pretrial conditions. But those defendants were stay-at-home mothers, each responsible for their six children, including one nursing infant. Neither had attempted to flee the country in the past, nor could either easily flee given that they had six dependent children. The defendant here, by contrast, has *already* attempted to flee the country, and does not have a nursing infant.

The fourth, and final, factor—the nature and seriousness of the danger to any person or the community posed by defendant's release—also weighs in favor of pretrial detention. As detailed in the criminal complaint, defendant possessed thousands of videos, pictures, essays, books, notes, and search histories about extremist ideology, jihad, ISIS, and violent propaganda. Importantly, defendant possessed bomb-making instructions and expressed a desire to die a martyr. Given (i) that defendant has been arrested and charged with a serious crime, (ii) that defendant was in possession of materials instructing how to make a bomb, and (iii) that defendant has professed a desire to die a martyr, the community would face momentous danger if defendant were released. Although defendant argues that he could be monitored on pretrial release, defendant is highly skilled at evading surveillance, as shown by his past use of VPNs and encrypted messaging. Thus, it is clear that defendant poses a danger to the community.

A review of the potential conditions offered by defendant also make clear that no set of conditions could reasonably assure the safety of the community or prevent defendant's flight. Defendant seeks release to his parents' home with monitoring and a secured bond signed for by his brother. Yet, some of defendant's relatives have assisted defendant in aspects of his crimes and in his prior efforts to flee the country. The government proffers that defendant's mother, who

defendant proposes to live with, assisted defendant in committing his crimes by accompanying defendant on multiple occasions to collect the money that defendant sent to Syria. Additionally, the pretrial services report indicates that defendant's mother, with whom he proposes to reside, refused to return the officer's phone calls. Moreover, in 2019, when defendant attempted to flee to Egypt, a relative provided defendant with a ride and was given the location of defendant's vehicle. Defendant also suggests that his brother would sign a secured bond, but, when pretrial services contacted defendant's brother, the brother refused to answer any questions and indicated that "defendant can live where he wishes." Pretrial Services Report (Dkt.14). In addition to the concerning refusal of defendant's family members to engage with the pretrial services officer, defendant's family members also appear to have a troubling lack of knowledge regarding defendant's life. *See id.* (indicating that defendant's mother does not know when he was married or if he has biological children). The involvement of some of defendant's family members in his attempts to flee this country and in his crimes as well as their refusal to provide information to the pretrial services officer all demonstrate that they are not suitable custodians. Accordingly, there is no combination of conditions that would prevent defendant's flight or reasonably assure the safety of the community.

It bears repeating that, following a consideration of the four factors and of the conditions proposed by defendant, no conditions of release would prevent defendant's flight or ensure the safety of the community. As detailed above, defendant is highly skilled at fleeing covertly. Even under heightened surveillance, defendant may still be able to contact ISIS leaders and learn how to escape, as he has previously relied on outside resources and contacts to assist his flight from this country. And, defendant possesses the materials necessary to teach defendant how to build a bomb. Thus, defendant may decide to harm the community, given his professed desire to die a

9

martyr. It is clear, therefore, that no conditions of release are suitable, and the only way to ensure that defendant appears for trial and does not harm the community is to detain him pretrial.

### III.

In summary, each of the four factors supports the finding that defendant should be held pretrial. The first factor—the nature and circumstances of the offenses charged—plainly weighs in favor of pretrial detention, because defendant is charged with a terrorism offense. The second factor—the weight of the evidence against defendant—also favors pretrial detention because the weight of the evidence is substantial. The third factor—defendant's history and characteristics—supports pretrial detention because defendant has a history of fleeing when he is in trouble with law enforcement. And the final factor—the nature and seriousness of the danger to any person or the community posed by defendant's release—also weighs in favor of pretrial detention because defendant possesses the skill and desire to die a martyr. The facts support that defendant is a risk of flight by a preponderance of the evidence and a danger to the community by clear and convincing evidence. Defendant's motion for pretrial release must therefore be denied.

Accordingly,

It is hereby **ORDERED** that defendant's motion to revoke the detention order (Dkt. 20) is **DENIED**.

The Clerk is directed to send a copy of this order to all counsel of record.

Alexandria, Virginia
June 6, 2023

/s/
T. S. Ellis, III
United States District Judge