IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA,

     v.                                       Criminal No. 1:23cr97 (DJN)

MOHAMMED AZHARUDDIN CHHIPA,
     Defendant.

## MEMORANDUM ORDER
### (Denying Motion to Suppress)

This matter comes before the Court on Defendant Mohammed Azharuddin Chhipa's ("Defendant") Motion to Suppress (ECF No. 156) ("Mot.") and Supplement to his Motion to Suppress (ECF No. 164) ("Supp.") (collectively, "Motion"), moving the Court to suppress all evidence obtained by the Government in response to two requests for voluntary disclosures from Facebook under the Stored Communications Act (SCA), 18 U.S.C. § 2702(b)(8), on March 19, 2019, and August 1, 2019, respectively, along with any evidence obtained by subsequent searches "built, in part" on these disclosures. (Mot. at 1.) Defendant alleges that the Government's § 2702 requests and Facebook's responses to those requests violated his Fourth Amendment rights. The Government responded in opposition (ECF No. 166) ("Resp."), and Defendant replied (ECF No. 172) ("Reply"). This matter now stands ripe for the Court's consideration. For the reasons set forth below, the Court DENIES the Defendant's Motion (ECF No. 156) and Supplement (ECF No. 164).[1]

---

[1] Because neither side requests an evidentiary hearing and no factual dispute exists, the Court resolves this Motion without the need for an evidentiary hearing.

## I.    **BACKGROUND**

During an interview with U.S. Customs and Border Protection (CBP) agents in October

2008, Defendant expressed the desire to travel to the Middle East and "fight with his brothers for

his beliefs," including for the purpose of killing Americans.  (Gov't Ex. 3 at 18;[2] Gov't Ex. 1 at

4.)  The Federal Bureau of Investigations (FBI) subsequently opened a counterterrorism

investigation into Defendant in March 2009.  (Gov't Ex. 3 at 18.)  The FBI closed that

investigation in 2018.  (Gov't Ex. 1 at 4.)

The FBI formally reopened its investigation into Defendant in March 2019.  (Resp. at 4.)

As part of its renewed investigation, the FBI filed at least five applications with Facebook for

voluntary disclosures under 18 U.S.C. § 2702, requesting that Facebook voluntarily turn over

information and content related to several Facebook accounts associated with Defendant.

(Supp. at 4.)  Defendant's Motion focuses on two of these applications:  a March 19, 2019

request for information pertaining to Defendant's "Carl Johnson" account and an August 1, 2019

request pertaining to his "Numan Ibn Muqrin Al Muzanee" account.

Defendant was arrested and charged in May 2023.  The grand jury returned a five-count

indictment (the "Indictment") against him on May 24, 2023.  (ECF No. 22.)  The Indictment

charges Defendant with one count of Conspiracy to Provide Material Support or Resources to a

Designated Foreign Terrorist Organization and four counts of Providing and Attempting to

Provide Material Support or Resources to a Designated Foreign Terrorist Organization, in

violation of 18 U.S.C. § 2339B.  (*Id.*)

Defendant now moves to suppress the information that the FBI received from Facebook

in response to its March 19, 2019 and August 1, 2019 § 2702 requests, as well as any fruits

---

[2]      Page numbers refer to the actual page within the PDF documents in the record, not the
pagination of the individual documents contained within the exhibits themselves.

thereof.  (ECF No. 156 and ECF No. 164.)   In support of his Motion, Defendant argues that the FBI's failure to secure search warrants in support of these requests rendered them unreasonable searches, and therefore impermissible, under the Fourth Amendment.  Defendant claims that he possessed a reasonable expectation of privacy in his "personal online communications" (Mot. at 13), including those made from the two Facebook accounts in question, and that Facebook's responses to the FBI's requests constitute government action subject to the Fourth Amendment's protections.  According to Defendant, to render these searches "reasonable" for Fourth Amendment purposes, the FBI would have needed to obtain search warrants prior to filing its requests, as there was no "imminent emergency" justifying an exception to the warrant requirement under the well-established exigent circumstances doctrine.  Since the FBI failed to do so, Defendant argues that these § 2702 requests constituted unreasonable searches under the Fourth Amendment and that any information obtained from these searches must therefore be suppressed.

The Government opposes Defendant's Motion on three primary grounds.  First, the Government argues that the FBI's warrantless § 2702 requests pass Fourth Amendment muster, because they were objectively reasonable under the exigent circumstances exception.  In support, the Government points to an array of facts including Defendant's history of support for militant Islam, his then-recent resumption of Facebook activity (including posts that explicitly endorsed militant acts of Islamic martyrdom), several statements suggesting that he was planning to engage in a militant operation in the near future, the elevated threat environment in the wake of the March 2019 shootings targeting Muslims in Christchurch, New Zealand, and the recent arrest of Defendant's co-conspirator in the Philippines.  In the alternative, the Government argues that, even if the FBI violated the Fourth Amendment by failing to obtain search warrants, it did so in

good faith reliance on the SCA's emergency provisions, which require only a good faith belief "that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay," and do not expressly require a search warrant.

18 U.S.C. § 2702(c)(4). Finally, the Government argues that it could have procured search warrants to obtain essentially the same information and eventually did so, rendering suppression inappropriate under the inevitable discovery doctrine.

## II.    **LEGAL STANDARD**

### A.    **Fourth Amendment Protections Against Unreasonable Searches and Exceptions to the Warrant Requirement**

The Fourth Amendment protects the "right of the people to be secure in their persons . . . against unreasonable searches." U.S. Const. amend. IV. Thus, "the underlying command of the Fourth Amendment is always that searches and seizures be reasonable." *Wilson v. Arkansas*, 514 U.S. 927, 931 (1995).

Fourth Amendment protections govern only those searches where "the person who claims the protection . . . has a legitimate expectation of privacy in the invaded place." *United States v. Castellanos*, 716 F.3d 828, 833 (4th Cir. 2013) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)). If a search is performed by a private party, rather than the government, the Fourth Amendment still applies as long as the private party acts as an "instrument[] or agent[]" of the government, with "some degree of Government participation in the private search." *United States v. Jarrett*, 338 F.3d 339, 344 (4th Cir. 2003) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971)).

Government searches generally require a warrant to qualify as "reasonable" under the Fourth Amendment. *See Katz v. United States*, 389 U.S. 347, 357 (1967) (describing warrantless searches as "per se unreasonable under the Fourth Amendment"). However, "[b]ecause the

4

ultimate touchstone of the Fourth Amendment is reasonableness, the Supreme Court has recognized certain exceptions to the warrant requirement." *United States v. Hobbs*, 24 F.4th 965, 969 (4th Cir. 2022) (cleaned up). Exigent circumstances can provide one such exception, which permits warrantless searches where the government demonstrates a "compelling need for official action and no time to secure a warrant." *Hobbs,* 24 F.4th at 969 (citing *Mitchell v. Wisconsin*, 588 U.S. 840, 849 (2019)). Courts have long recognized that the need to "protect individuals who are threatened with imminent harm," *United States v. Curry*, 965 F.3d 313, 321 (4th Cir. 2020) (en banc) (quoting *Carpenter v. United States*, 585 U.S. 296, 320 (2018)), constitutes one such "compelling need." *See United States v. Yengel*, 711 F.3d 392, 396 (4th Cir. 2013) (When law enforcement faces "an immediate and credible threat or danger," courts consider it "inherently reasonable . . . to act without a warrant."); *Mora v. The City Of Gaithersburg, MD*, 519 F.3d 216, 222 (4th Cir. 2008) ("If there is a grave public need for the police to take preventive action, the Constitution may impose limits, but it will not bar the way."). Courts often refer to this as the "emergency-as-exigency" exception. *Curry*, 965 F.3d at 322.

In assessing whether an emergency is "enveloped by a sufficient level of urgency" to justify the emergency-as-exigency exception, *Yengel*, 711 F.3d at 397, courts in the Fourth Circuit must weigh several considerations. They must assess the nature of the threat or danger, including its immediacy, and whether the government held an objectively reasonable belief that an emergency existed. *Id.* The government must base such belief on "specific articulable facts and reasonable inferences that could have been drawn therefrom." *Id.* Finally, in arriving at a decision, courts must consider the totality of the circumstances at hand. *Hobbs*, 24 F.4th at 970.

When moving for suppression on Fourth Amendment grounds, the initial burden to establish a legitimate expectation of privacy in the place being searched lies with the movant.

*Castellanos*, 716 F.3d at 832 (citing *Rawlings v. Kentucky,* 448 U.S. 98, 104 (1980)).  Where the movant successfully establishes such an expectation of privacy, the burden shifts to the government, which must establish, by a preponderance of the evidence, that the challenged material is nonetheless admissible. *United States v. Aigbekaen*, 943 F.3d 713, 719 (4th Cir. 2019); *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

**B.    Reasonable Expectations of Privacy in Facebook Communications**

To establish a reasonable expectation of privacy in his communications, a defendant must make two showings:  that the defendant has "an actual (subjective) expectation of privacy" indicating that he "seeks to preserve [something] as private," *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (alteration in original), and that the defendant's expectation constitutes "one that society is prepared to recognize as 'reasonable.'" *Id.* (quoting *Katz*, 389 U.S. at 361 (Harlan, J., concurring)).  In other words, the movant must show that he had a subjective expectation of privacy that was objectively reasonable.

To help determine what constitutes a reasonable expectation of privacy in one's communications on Facebook and similar social media platforms, courts have looked to users' privacy settings and the degree to which these demonstrate an intent to "preserve [something] as private." *Katz,* 389 U.S. at 351; *see United States v. Westley*, 2018 WL 3448161, at *6 (D. Conn. July 17, 2018) ("Because of the nature of a Facebook account, which allows users to post information privately, share information with select groups of 'friends,' or post information publicly, courts have held that whether the Fourth Amendment applies to a user's Facebook content 'depends, *inter alia*, on the user's privacy settings'"); *United States v. Meregildo*, 883 F. Supp. 2d 523, 525 (S.D.N.Y. 2012) ("[P]ostings using more secure privacy settings reflect the user's intent to preserve information as private and may be constitutionally protected") (citations

6

omitted); *United States v. Chavez*, 423 F. Supp. 3d 194, 202–04 (W.D.N.C. 2019) (holding that a Facebook user has a reasonable expectation of privacy in non-public Facebook content which he intentionally excluded from public access). The burden of establishing what privacy settings were in place remains on the defendant; a failure to introduce evidence on this point can doom a defendant's claim that he possessed a reasonable expectation of privacy in his account. *See United States v. Weber*, 599 F. Supp. 3d 1025, 1038 (D. Mont. 2022) (holding that a defendant lacked a reasonable expectation of privacy in the content of his social media accounts in part because he did not introduce any evidence regarding the privacy settings for his account); *Westley*, 2018 WL 3448161 at *6 (holding that defendants failed to meet their burden under *Katz* when they failed to provide "affidavits or any other facts concerning the privacy settings on their Facebook accounts or any steps they took to keep their Facebook content private").

### III.   ANALYSIS

The Court disagrees with Defendant's Fourth Amendment claims concerning the § 2702 requests in question. As a threshold matter, the Court finds that Defendant fails to establish a reasonable expectation of privacy in any *non-private* messages that he posted or transmitted via his Facebook accounts; consequently, the Fourth Amendment does not apply to any of these materials. *See Castellanos*, 716 F.3d at 833 (quoting *Rakas*, 439 U.S. at 143) (Fourth Amendment protections only govern searches where "the person who claims the protection … has a legitimate expectation of privacy in the invaded place."); *Meregildo*, 883 F. Supp. 2d at 525 ("When a social media user disseminates his postings and information to the public, they are not protected by the Fourth Amendment."). As to Defendant's *private* Facebook messages, the Court finds that the FBI's emergency § 2702 requests fall within the well-established exigent

circumstances exception, given the threat of serious harm underpinning both requests. *See Mora*, 519 F.3d at 222 ("If there is a grave public need for the police to take preventive action, the Constitution may impose limits, but it will not bar the way."). Given these findings, the Court finds that the March 19, 2019 and August 1, 2019 § 2702 requests and Facebook's responses to these requests did not violate the Fourth Amendment's prohibition on unreasonable searches. For these reasons, and as explained more fully below, the Court DENIES Defendant's Motion (ECF No. 156) and Supplement (ECF No. 164).

A.   **Defendant Possessed a Legitimate Expectation of Privacy in Some, But Not All, of His Facebook Communications**

Per the parties' briefing, Facebook's responses to the March 19, 2019 and August 1, 2019 § 2702 requests contained both private "direct messages" and other non-private communications by Defendant, including public posts, re-posts, comments, and interactions with posts by other Facebook accountholders. (Def. Ex. 6A at 2–6; Supp. at 3; *see* Gov't Ex. 4 at 34–39 (describing different types of content in Facebook accounts).) Given the ambiguous language in Defendant's briefing,[3] the Court construes Defendant's motion to cover *all* material provided by Facebook in

---

[3]   Defendant's Motion, on its face, appears to seek suppression of the *entirety* of Facebook's responses to the FBI's March 19, 2019 and August 1, 2019 § 2702 requests. (*See* Mot. at 13 ("[T]his reasonable expectation of privacy is attached to *all of Mr. Chhipa's online communications*") (emphasis added); Supp. at 2 ("it is clear that Mr. Chhipa was … moving to suppress the fruits of … any warrantless search of his private social media *communications and content*" (emphasis added, quotations omitted).) However, Defendant's Motion also suggests, on other occasions, that it seeks suppression only as to *private* communications, (*see* Mot. at 20 (referring to "Mr. Chhipa's *private* online communications" (emphasis added)), and repeatedly cites cases where courts distinguished between private messages and public posts for purposes of the Fourth Amendment. (*See* Mot. at 10, 12–13 (citing *United States v. Zelaya-Veliz*, 94 F.4th 321 (4th Cir. 2024); *United States v. Bledsoe*, 630 F. Supp. 3d 1 (D.D.C. 2022); *Meregildo*, 883 F. Supp. 2d).)

8

response to the FBI's requests, including both private and non-private communications. The Court considers each type of communications in turn.

### 1.    Defendant possessed a legitimate expectation of privacy in his private Facebook messages.

As to Defendant's private messages, the Government concedes what it terms "the overall presumption" that individuals possess a legitimate expectation of privacy in "private communications . . . [on] a third-party service like Facebook." (Resp. at 6.) The Court will therefore assume, for the purposes of this Opinion, that Defendant has a legitimate expectation of privacy in his private Facebook messages and that, to the extent the FBI's § 2702 requests cover private messages, these requests and Facebook's responses are subject to the Fourth Amendment's reasonableness requirement.[4]

### 2.    Defendant did not possess a legitimate expectation of privacy in his non-private Facebook communications.

As to his non-private Facebook communications, Defendant fails to make an adequate showing proving a legitimate expectation of privacy in these materials. Numerous recent opinions, including from this Circuit, expressly distinguish between private messages sent via social media platforms and posts or other communications on those platforms that are intended for broader consumption; indeed, Defendant cites several of these cases himself. *See United States v. Zelaya-Veliz*, 94 F.4th 321, 334 (4th Cir. 2024) ("Most federal courts to rule on the issue have agreed that Facebook and other social media users have a reasonable expectation of

---

[4]    The Government has not argued that the SCA's authorization to file emergency requests for third-party information absolves law enforcement of its duty to comply with the Fourth Amendment. The Court therefore need not wade into the murky waters of the relationship between the SCA and the Fourth Amendment, and the unsettled questions Defendant raises concerning the effect (if any) of the Supreme Court's holding in *Carpenter v. United States*, 585 U.S. 296 (2018), on SCA-based requests for other types of information. (Mot. at 17–20.)

privacy in content that they *exclude* from public access, such as private messages.") (emphasis added); *Meregildo*, 883 F. Supp. 2d at 525 ("When a social media user disseminates his postings and information to the public, they are not protected by the Fourth Amendment."); *United States v. Bledsoe*, 630 F. Supp. 3d 1, 18 (D.D.C. 2022) (citing "the weight of persuasive authority holding that *non-public* content held on social media accounts is protected under the Fourth Amendment.") (emphasis added).  Under this approach, courts generally have not granted blanket Fourth Amendment protections to *non-private* Facebook messages, including posts directed at others and messages posted on other users' Facebook pages.  Rather, as previously discussed, they look to the privacy settings governing the relevant material and make a fact-specific determination as to whether these settings justify a reasonable expectation of privacy —with the burden on defendants to demonstrate that their settings support such a finding.  *See, e.g., United States v. Devers*, 2012 WL 12540235, at *2 (N.D. Okla. Dec. 28, 2012) ("[U]nless the defendants can prove that their [F]acebook accounts contained security settings which prevented anyone from accessing their accounts, this court finds their legitimate expectation of privacy ended when they disseminated posts to their 'friends' because those 'friends' were free to use the information however they wanted—including sharing it with the government."); *Weber*, 599 F. Supp. 3d at 1038 (holding that defendant lacked reasonable expectation of privacy in part because he did not introduce evidence regarding privacy settings); *Westley*, 2018 WL 3448161 at *6 (same).

Defendant plainly fails to satisfy this burden.  Throughout his briefing, he made no representations to the Court regarding the privacy settings on his two Facebook accounts.  The fact that the majority of Defendant's non-private posts in the record contain information gleaned from other online sources (*see* Gov't Ex. 2 at 8-25; Def. Ex. 6A at 2-3 (screenshots and

descriptions of Defendant's posts indicating that many were re-posts from other accounts))
strongly suggests that Defendant was indeed expecting (or at least hoping) that this information
would be consumed by others, rather than expecting it to remain private. Defendant has
submitted nothing to suggest the contrary. Since the burden falls on Defendant to establish a
reasonable expectation of privacy, and since he fails to submit evidence in support of such a
finding, his Fourth Amendment claim as to any non-private Facebook communications in
Facebook's responses to the FBI's § 2702 requests must fail.

C.      **Facebook's Responses to the FBI's § 2702 Requests Qualify as Government Action**

Defendant asserts that Facebook "acted as an agent of the government" in providing the
contents of his Facebook accounts to the FBI, and that the Fourth Amendment therefore covers
its actions. (Mot. at 13.) The Government does not oppose this position in its briefing.
Accordingly, the Court assumes, for the purposes of this Opinion, that Facebook providing the
contents of Defendant's two Facebook accounts to the FBI qualifies as government action for
purposes of the Fourth Amendment.

Based on the above, the Court finds that Defendant has satisfied his burden to establish a
reasonable expectation of privacy in his private Facebook messages and that the March 19, 2019
and August 1, 2019 § 2702 requests constitute searches subject to Fourth Amendment
protections. The burden therefore shifts to the Government, which must prove by a
preponderance of the evidence that these searches were reasonable.

D.      **The FBI's § 2702 Requests Constituted Reasonable Searches Under the Exigent Circumstances Exception**

The Government does not dispute that the FBI failed to obtain search warrants in support
of its § 2702 requests. Rather, it argues that these requests fall under the well-established exigent

11

circumstances exception to the warrant requirement.  (Resp. at 7–10.)  Defendant strenuously

disputes that claim.  (Reply at 3–12.)  The Court summarizes each side's arguments before

engaging in its own analysis.

      The Government argues that the FBI's warrantless applications for § 2702 disclosures

from Facebook were reasonable based on the specific factual scenarios underpinning each of its

requests.  For the March 19, 2019 request, the Government points to the recent mass shooting

targeting two mosques in Christchurch, New Zealand, and the elevated threat environment in the

wake of these shootings.  (*See* Gov't Ex. 3 at 3.)  Meanwhile, after a "lengthy period of little

activity" on his Facebook account, the Defendant (whose prior militant Islamist sympathies were

known to the FBI) "suddenly post[ed] a stream of violent, threatening, pro-ISIS content."  (Resp.

at 4).  As the Government argues, this "sudden[]" shift in behavior, the violent content of his

posts, the elevated threat environment, and his documented history of Islamist leanings provided

a sufficient basis to "justif[y] proceeding under the emergency provisions of the SCA" (Resp. at

10) and made it objectively reasonable to do so "within the exigent circumstances exception to

the warrant requirement."  (Resp. at 13.)

      For the August 1, 2019 request, the Government highlights the FBI's knowledge of

money transfers and a potential co-conspirator relationship between Defendant and Joyce Fornal,

an alleged Islamist operative in the Philippines, who had recently been arrested.  (Resp. at 5;

Gov't Ex. 6 at 11–15.)  The FBI's concern that Defendant "might react in a desperate fashion" to

that arrest serves as a central justification for the August 1, 2019 emergency application.  (Resp.

at 2.)  This concern also stemmed from two additional facts:  then-recent conversations between

Defendant and an online covert employee (OCE) in which Defendant expressed plans to

potentially perform a militant "operation" "in this next couple of months" (Resp. at 5.), and

Defendant's "realiz[ation]," as communicated in a private message to another Facebook user, that he "only [has] 3-4 destinations in life," those being prison, "hijrah/jihaad" (migration / fighting) and "shahadah" (martyrdom). (Resp. at 4). Based on all of this information, the Government submits that the FBI's assessment of an "emergency situation" supporting a finding of exigent circumstances was objectively reasonable. (Resp. at 5, 12.)

The Government also argues that the significant likelihood of a delayed response to a non-emergency request based on a search warrant (as opposed to a faster response with a warrantless § 2702 request) renders the FBI's emergency applications appropriate in this case. In support, it cites the Fourth Circuit's decision in *United States v. Hobbs*. There, a unanimous panel found that a "notoriously slow" phone company that potentially required "several days" to produce location information responsive to a warrant weighed in favor of finding that warrantless collection of this information was objectively reasonable. *Hobbs*, 24 F.4th at 971. Given Facebook's track record of responding more slowly to "traditional warrants" than emergency disclosures, the Government argues that this factor further supports a finding of objective reasonableness in this case. (*See* Resp. at 12 ("Facebook typically responds faster to emergency disclosure requests than to traditional warrants.").)

Defendant counters by invoking Fourth Circuit case law, which requires the Government to establish "an immediate and credible threat" based on "specific articulable facts and reasonable inferences" to qualify for the exigent circumstances exception. *Yengel*, 711 F.3d at 397. In Defendant's telling, the Government falls well short of this standard. Specifically, Defendant argues that none of the communications cited by the Government include an actual or imminent threat (Mot. at 22); the FBI's "emergency" was based only on long past behavior, undermining any argument of immediacy (Reply at 5–6); and that, based on the information

13

available, the FBI had "certainly enough time" to obtain a warrant (*Id.* at 7).  Instead, Defendant
alleges that the Government relies on "mere hot air — in the form of odious social media
postings" to craft a rationale amounting to nothing but "speculation and suppositions with no real
factual underpinnings."  (Reply at 12, 11.)

The Court proceeds to analyze the record evidence and the parties' arguments relative to
each § 2702 request in turn.

### 1.   The FBI's March 19, 2019 § 2702 request constituted a reasonable search under the exigent circumstances exception.

The Court's inquiry would ideally begin with the language of the FBI's March 19, 2019
§ 2702 request itself.  Unfortunately, the Government has been unable to recover this document.
(Mot. at 6.)  Instead, the Court considers the statement submitted by the FBI Agent Marosy,
drafted several years later, in which he communicates the belief that the FBI's decision to file
this emergency request without a warrant "would have been based on historical knowledge of the
subject, the significant increase in and content of the publicly available Facebook posts provided
by FBI Miami, and the global up-tick in extremist rhetoric in the immediate aftermath of the
Christchurch, New Zealand attack on two mosques."  (Gov't Ex. 3 at 4.).  This statement largely
tracks the Government's assertions in support of exigency:  the significant increase in
Defendant's posting activity; the militant, pro-jihad and pro-ISIS nature of these posts; the
increased global threat of retributory attacks in the wake of the heinous mass shootings in
Christchurch, New Zealand; and Defendant's documented desire to kill Americans.  Relevant
exhibits in the record corroborate these assertions.  (*See* Gov't Ex. 1 (description of Defendant's
posting history); Gov't Ex. 2 at 7–35 (screenshots of Defendant's relevant Facebook posts); Def.
Ex. 6A at 2–3 (written descriptions of Defendant's relevant Facebook posts); Gov't Ex. 3 at 3

(description of increased threat environment in the wake of the Christchurch shootings); Gov't Ex. 1 at 4 (account of Defendant's prior statements concerning his desire to kill Americans).)

In light of these facts and considering the totality of the circumstances, this Court finds the FBI's filing of the March 19, 2019 § 2702 request on an emergency basis (and without a warrant) to be objectively reasonable. Defendant's wave of posts in February and March 2019 marked a new set of facts on the ground to which the FBI was actively responding. These posts did not represent a mere continuation of an "odious" but "demonstrated practice" by a serial, harmless Facebook poster, as Defendant argues. (Reply at 12, 6.) Rather, they constituted a new flurry of activity by a known Islamist sympathizer with a documented interest in killing Americans. As the record amply demonstrates, Defendant's posts contained militant statements that were serious and inflammatory. And these posts did not occur in a vacuum; rather, Defendant posted them, at least in part, within a heightened threat environment following the New Zealand shootings. On the basis of these facts and this context, the Court finds that the FBI reasonably perceived an "immediate and credible threat or danger," *Yengel*, 711 F.3d at 397, from Defendant warranting an emergency response.

The Fourth Circuit's holding in *Mora v. The City of Gaithersburg, MD* supports the Court's determination. In that case, the Fourth Circuit reaffirmed law enforcement's broad latitude when confronting a "grave threat and true emergency" — namely, that it "is entitled to take whatever preventive action is needed to defuse it." *Mora*, 519 F.3d at 224–25. Specifically, the court looked to a threat's "likelihood, urgency, and magnitude," stating that, as these increase, "so does the justification for and scope of" permissible preventive action. *Id.* at 224. It also affirmed "the room for judgment that law enforcement must enjoy in any emergency where lives are on the line." *Id.* at 225. The Government argues here that a potential militant act of the

15

kind suggested by Defendant's posts elevates the "magnitude of the threat" to the "highest possible level." (Resp. at 9–10.)  Given the content of his messages and his prior indications concerning acts of violence against Americans, the Court find this argument persuasive.  In light of that threat's gravity, and heeding the *Mora* court's words, this Court agrees with the Government that the FBI was well within its wide latitude to take necessary action and "defuse" that threat by filing its emergency § 2702 request.

The Court disagrees with Defendant's points concerning the specificity of the Government's evidence and the time that the FBI had available to seek a warrant.  The specific content that Defendant posted and interacted with, along with his specific prior statements to law enforcement agents and the specific overall threat environment following the Christchurch shootings constitute sufficiently "specific articulable facts" for the FBI to draw "reasonable inferences" that a "compelling need for official action and no time to secure a warrant" existed. *Yengel*, 711 F.3d at 397; *Hobbs*, 24 F.4th at 969.  The Court also credits the Government's representation that a warrant-based request would likely have delayed Facebook's response, given its track record, and would have unreasonably exacerbated the threat to human life.  Given these realities (which he does not dispute), Defendant's arguments that law enforcement could have achieved its goals just as effectively by seeking a warrant fall flat.

Accordingly, in light of the specific facts articulated by the Government and considering the totality of the circumstances, this Court finds that the Government has proven, by a preponderance of the evidence, that the FBI's warrantless § 2702 request to Facebook on March 19, 2019, constituted a reasonable search for Fourth Amendment purposes.  The Court therefore denies Defendant's Motion to Suppress evidence returned by Facebook in response to this request as well as any fruits thereof.

16

    **2.**      **The FBI's August 1, 2019 § 2702 request also constituted a reasonable search under the exigent circumstances exception.**

As for the FBI's August 1, 2019, request concerning Defendant's AlMuzanee account, the Court begins its analysis by looking at relevant portions of the § 2702 request that the FBI submitted to Facebook:[5]

> The FBI has determined the owner of the account has provided in excess of $12,000 (between March and July, 2019) to a Philippines-based individual, Joyce Ann Fornal, who was arrested by Filipino law enforcement on 7/24/2019. The individual was arrested due to her affiliation with an organization known as the Dawlah Islamiyah Turaife Group, an ISIS-inspired group believed responsible for at least three terrorist bombings since August, 2018.
>
> [...]
>
> Emergency 2702 disclosures acquired from Facebook on the Carl Johnson account revealed Fornal originally solicited funds from [Defendant] over Facebook.  Given the continued transfer of funds between the owner of the Nu'man Ibn Muqrin Al-Muzanee Facebook account and Fornal over the past several months, the FBI believes communications have continued between the two parties over Facebook's platform.
>
> In light of Fornals [sic] recent arrest, the FBI believes [Defendant] may react in a desperate manner and potentially perpetrate an attack encompassing an immediate threat to life and limb.  Based on the Emergency 2702 disclosures acquired from Facebook on the Carl Johnson Facebook account, the FBI discovered [Defendant] espoused a radical interpretation of Islam and had expressed insinuations that violence is legitimate in light of this interpretation.
>
> [...]
>
> "[I]n conversation with another Facebook user, the Carl Johnson account told the user: 'I've already planted the seeds and realized that I only have 3-4 destinations in life and I accept whatever Allaah Aza Wajjal will give me inshaAllaah. 1) Prison 2) Hijrah/Jihaad 3) Shahadah.' The FBI notes the "Shahadah" is a reference to dying a martyr and is the aspiration of radical Islamic extremists around the world. . . "

---

[5]    The Court notes that the Government has not produced the original § 2702 request for the FBI's August 1, 2019 application.  The Court instead relies on Government Exhibit 7, which contains an attestation by the FBI that it sourced the relevant language from the "original submitter" and that this text constitutes a "fair and accurate representation" of the original request.  (Gov't Ex. 7 at 2.)

(Gov't Ex. 7 at 3.)

This language largely tracks the Government's briefing, which emphasizes the relationship between Defendant and Fornal, her arrest, and Defendant's recent statements indicating a desire to commit acts of violence, including to achieve martyrdom, as the primary reasons for the FBI's assessment that Defendant posed a potential immediate threat. This threat, in turn, rendered the FBI's filing of an emergency § 2702 request with Facebook objectively reasonable. The relevant exhibits in the record corroborate the Government's factual assertions. (*See* Gov't Ex. 6 at 11–15 (describing Defendant and Fornal's relationship and past interactions, and Fornal's recent arrest); Gov't Ex. 1 at 4 (account of Defendant's statements concerning martyrdom); Gov't Ex. 2 at 8 (screenshot of Defendant's threatening post); Gov't Ex. 5 at 6 (transcript of conversation between Defendant and OCE concerning Defendant's plans for a future "operation").)

Based on these facts, the Court finds the FBI's filing of the August 1, 2019 § 2702 emergency request to be objectively reasonable. And this call is not a close one. As outlined above, by August 1, 2019, the FBI knew of several specific statements made by Defendant, all recent, that indicated interest and willingness to engage in militant action. One of these statements specifically indicated an intent to perform such action in the near term. (Gov't Ex. 5 at 6.) The FBI knew that Defendant was sending money to an operative engaged in terrorist activities abroad and that this operative had recently been arrested. And it was aware of Defendant's extensive history espousing radical, militant ideology. The Government puts forward sufficiently specific facts to support a reasonable inference that an immediate threat existed, rendering an emergency request objectively reasonable.

Defendant objects that a significant portion of the evidence supporting the FBI's August 1, 2019 § 2702 request was not newly acquired by the FBI and was therefore "stale." (Reply at 5.) He points to statements that were several months old at the time of the August request (Supp. at 5) and the FBI's awareness of his posts and his ideology "as far back as 2013" (Supp. at 7) (emphasis omitted) to argue that no reasonable sense of immediacy supported an exigent circumstances rationale for an exception to the warrant requirement. While this argument might be persuasive in a case where these facts were the *only* evidence cited, it rings hollow here. As previously discussed, the FBI based its August request, at least in part, on several recent events — including Defendant's own statements concerning a potential "operation" "in this next couple of months," (Gov't Ex. 5 at 6), and the arrest, mere days earlier, of his co-conspirator in the Philippines. Defendant's earlier statements provide essential context for assessing the gravity and seriousness of the threat that he presented. His characterization that the FBI's information consisted of nothing but "old/stale posts" and "naked conclusory remarks" (Supp. at 7; Mot. at 22) paints an incomplete picture that does not reflect the facts on the ground when the FBI was making its assessment. Those facts, when viewed in their totality, point to a significant threat of harm that the FBI was objectively reasonable to act upon.

In light of the specific articulable facts discussed above, and in considering the totality of the circumstances, this Court finds that the FBI's warrantless § 2702 request to Facebook on August 1, 2019, falls within the exigent circumstances exception to the warrant requirement and was therefore objectively reasonable for Fourth Amendment purposes. Therefore, the Court denies Defendant's Motion to Suppress the results of this request and the fruits thereof.[6]

---

[6]     The Court need not address the merits of the Government's alternative arguments against exclusion, since the challenged § 2702 requests clear the Fourth Amendment hurdle under the exigent circumstances exception.

Accordingly, the Court hereby DENIES Defendant's Motion to Suppress based on a violation of his Fourth Amendment rights, and will admit at trial information obtained by the Government in response to the two § 2702 requests in question.

## CONCLUSION

For the reasons set forth above, the Court hereby DENIES Defendant's Motion to Suppress (ECF No. 156) and Supplement to his Motion to Suppress (ECF No. 164).

Let the Clerk file a copy of this Memorandum Order electronically and notify all counsel of record.

_____/s/_____

David J. Novak
United States District Judge

Alexandria, Virginia
Date:  November 5, 2024

20