IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA,

v.   Criminal No. 1:23cr97 (DJN)

MOHAMMED AZHARUDDIN CHHIPA,
    Defendant.

## MEMORANDUM ORDER
### (Denying Defendant's Motion for Rule 15 Deposition)

This matter comes before the Court on Defendant's motion for a deposition pursuant to Federal Rule of Criminal Procedure 15. (ECF No. 173 ("Motion").) Defendant seeks to depose a foreign government's Confidential Human Source ("CHS" or "T.M.") who posed as Defendant's potential bride. Defendant further requests that the Court issue an accompanying letter rogatory. For the following reasons, the Court hereby DENIES Defendant's Motion (ECF No. 173).

## I.   BACKGROUND

The Government charges Defendant with conspiracy to provide material support to a foreign terrorist organization and four substantive offenses of the same. Specifically, the Government alleges that Defendant participated in a conspiracy with Unindicted Co-Conspirator 1 ("UCC-1") and others to provide material support to ISIS, and that as part of that conspiracy, Defendant sent funds to UCC-1, a British-born ISIS member residing in Syria, on four occasions in 2021 and 2022. (ECF No. 117.)

Defendant met T.M., the CHS who Defendant seeks to depose, through Defendant's "Carl Johnson" Facebook account in March 2019. Defendant had already been posting ISIS

propaganda on this account. Soon after connecting with T.M., who purported to be a Muslim woman, Defendant told her "if my current situation would have allowed it, I would not have hesitated to propose/marry any woman like yourself . . . Unfortunately though, I don't see any future for me or anyone close to me who will not get tested like crazy! I've already planted the seeds and realized that I only have 3–4 destinations in life and I accepted whatever Allah Aza Wajjal [mighty and majestic God] will give me inshaAllaah [God willing]. 1) Prison 2) Hijrah/Jihaad [traveling overseas and fighting] 3) shahadah [martyrdom]."

T.M. later replied to Defendant requesting recommendations on Telegram sites related to Islamic teachings. Defendant told T.M. to "[b]e careful on telegram if you are trying to lay low as that is one of the many ways the Islamic State communicates so obviously its [sic] being monitored." Defendant then sent T.M. Telegram channels to follow and warned T.M. about following people she does not know because of "spies" and "agents." After Facebook suspended Defendant's "Carl Johnson" account, Defendant created new accounts and added T.M. as a friend from these accounts. Defendant has all of the chats between T.M. and Defendant that the Government possesses. (Gov. Resp. to Mot. at 8.)

On February 9, 2020, Online Covert Employee 5 ("OCE-5") contacted Defendant by Telegram private message, claiming that she was a friend of T.M. and would assess Defendant's character and fitness as a potential husband for T.M. OCE-5 inquired about Defendant's plans and whether they might include illegal or extremist activity, including by asking Defendant whether he supported ISIS. Defendant responded, "you can easily tell from my posts who I support and what I stand for, so I really didn't understand why anyone would ask who I support when all they'd have to do is look at the content I'm sharing and posting." OCE-5 asked if

Defendant thought he would be arrested, because T.M. would find it unsettling to be alone. Defendant responded, "Well they haven't arrested me yet."

Then, OCE-5 introduced defendant to Undercover Employee 2 (UCE-2), who purported to be T.M.'s cousin, able to offer T.M.'s hand in marriage. Defendant met in person with UCE-2 twice, with the goal of arranging a marriage between himself and T.M. Defendant indicated to UCE-2 that he was already sending money to women in Syrian refugee camps, to which UCE-2 made supportive statements. Neither T.M., OCE-5 nor UCE-2 ever provided any money to Defendant.

While Defendant indicates that OCE-5 and UCE-2 work as FBI undercover agents whom Defendant can subpoena, T.M. serves as a CHS for a foreign government, placing her out of reach of Defendant's subpoena powers. Defendant believes, however, that her testimony would support Defendant's entrapment defense and seeks the Court's assistance in deposing her.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 15(a) permits depositions to preserve the testimony of prospective witnesses for use at a later trial when "exceptional circumstances" exist and "the interest of justice" so requires. In assessing whether exceptional circumstances exist, a court looks to whether the moving party has established the materiality of the witness' testimony. *United States v. Jefferson*, 594 F. Supp. 2d 655, 664 (E.D. Va. 2009); *see also* Fed. R. Crim. P. 15, Advisory Committee Note (indicating that courts should grant depositions only if "it appears that . . . the prospective witness' testimony is material, and . . . necessary to prevent a failure of justice."). In this context, materiality has the same meaning as in *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny — specifically, that "the evidence or testimony must be exculpatory, and not corroborative or cumulative of other evidence." *United States v. Rosen*, 240 F.R.D. 204,

3

209 (E.D. Va. 2007). A district court must "carefully consider all the circumstances and exercise its discretion to ensure that Rule 15(a) depositions are permitted only in the rare instances or exceptional circumstances contemplated by the Rule." *Jefferson*, 594 F. Supp. 2d at 665.

Defendant claims that T.M.'s testimony would help exculpate Defendant because it constitutes a central component of his entrapment defense. An entrapment defense consists of two related elements: (1) government inducement to commit a crime, and (2) the lack of predisposition on the part of the defendant to engage in criminal conduct. *Matthews v. United States*, 485 U.S. 58 (1998). The first element, "inducement," requires government overreach "and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party." *United States v. Hsu*, 364 F.3d 192, 198 (4th Cir. 2004). The second element, predisposition, refers to "the defendant's state of mind before government agents make any suggestion that he shall commit a crime." *Id.* at 198.

### III. DISCUSSION

Defendant has failed to show that exceptional circumstances exist. As discussed above, to succeed on his Motion, Defendant must establish the materiality of T.M.'s testimony. Here, Defendant fails in that regard because he provides nothing to suggest that T.M.'s testimony would tend to exculpate the Defendant.

Specifically, Defendant proffers that T.M. would testify that, as a paid CHS for a foreign government, she misled Defendant into believing that she wanted to marry him and that their relationship developed to the point that she introduced him to an intermediary to falsely arrange for such a marriage. (Mot. at 8–9.) Further, Defendant claims that T.M. would testify about her arrangement with the government for which she acts as a CHS, including the payment arrangement, people that the government instructed her to seek out, and acts that it instructed her

4

to take and the extent to which the payment structure depended on particular investigatory outcomes. (*Id.* at 9.) Defendant suggests that T.M.'s testimony would establish an entrapment defense, but provides little clarity on how. He claims, rather obliquely, that the testimony would tend to exculpate Defendant, because T.M. would establish "government inducement, particularly through the initial encounter, developing the relationship, and passing it on to the FBI." (*Id.* at 9.)

Defendant further contends that T.M.'s testimony constitutes important, non-cumulative evidence, because T.M. served as "the author of the trap" and "the impetus for all other interactions" and, thus, the testimony of the others involved in the marriage scheme will not suffice. (*Id.* at 10.) Defendant argues that the FBI agents cannot testify about "the degree to which T.M. prodded or encouraged [Defendant] to engage in unlawful acts" or his "loneliness" or "eagerness and earnestness." (*Id.*) To the extent that Defendant's argument focuses on the "relevance" of T.M.'s testimony (Rep. at 2–3), he employs the wrong standard. To meet the threshold for the Court to order a Rule 15 deposition, T.M.'s testimony must be exculpatory, not merely relevant.

There exists no basis to conclude that T.M. would have exculpatory information to offer. Defense counsel focuses on how T.M. served as the "fake bride" who "bait[ed]" Defendant. (Rep. at 2.) To the extent that she served as bait, she did so with the goal of inducing him to engage with OCE-5 and UCE-2, so that they could investigate Defendant's ongoing criminal conduct. But defense counsel has presented nothing to support the idea that T.M. encouraged Defendant to conspire to send money to ISIS members or to actually send such funds. To the extent that defense counsel suggests that T.M. did so, the suggestions are purely speculative and are framed as such. (*See id.* ("Perhaps [T.M.] was telling [Defendant] he *should* provide money

5

to Syrian ISIS members." (emphasis in original).)  Without any basis to believe that T.M. induced Defendant to engage in any criminal acts, defense counsel's focus on the emotional leverage she would have had, as a potential bride or as someone who "played on [Defendant's] loneliness" (Rep. at 7), proves misplaced.

Defendant rests his arguments on claims that T.M.'s testimony stands necessary to present the "full picture" for the jury, but such vague assertions do not allow him to succeed on his Rule 15 Motion.  OCE-5 and UCE-2 can testify as to the pretense by which they established contact with Defendant.  Moreover, the Government has agreed to stipulate that T.M. served as a paid source for a foreign government.  (Gov. Resp. at 8.)  To the extent that Defendant believes UCE-2 improperly encouraged Defendant's unlawful acts (Rep. at 3), defense counsel may address that through UCE-2's testimony; T.M. was not present during those conversations.  Whatever value that T.M.'s testimony might have provided will already be available to the jury by other means.

As a final note, Defendant seeks a letter rogatory to accompany an Order for a Rule 15 deposition.  Upon request, "to help secure deposition testimony, a court should grant an application for letters rogatory when (i) the party seeking a deposition has established exceptional circumstances justifying the taking of the deposition under Rule 15; and (ii) the prospective witness will not appear at a deposition voluntarily." *Rosen*, 240 F.R.D. at 215.  Given that the Court has found that Defendant failed to establish the materiality of T.M.'s testimony and that a Rule 15 deposition order would be improper, the Court also denies Defendant's request for a letter rogatory.

## IV. CONCLUSION

For the reasons set forth above, the Court hereby DENIES Defendant's Motion seeking a Rule 15 deposition (ECF No. 173).

Let the Clerk file a copy of this Memorandum Order electronically and notify all counsel of record.

It is so ORDERED.

/s/
David J. Novak
United States District Judge

Alexandria, Virginia
Date: November 5, 2024