IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   v.<br><br>MOHAMMED AZHARUDDIN CHHIPA,<br>      *Defendant.* | Case No.: 1:23-cr-97 (DJN) |

### DEFENDANT'S MOTION FOR *DAUBERT* HEARING

Mr. Chhipa does not quibble with the government's expert, Dr. Aaron Zelin's, qualifications on ISIS generally. However, his anticipated testimony detailed in the expert disclosure received yesterday raise questions as to the reliability of the information he will provide in certain areas.[1] Particular conclusions within Dr. Zelin's 12-page narrative appear to exceed the bounds of his asserted expertise in "international terrorism with a focus on Islamic fundamentalist terrorism and the Middle East." *See* Def.'s Ex. 1, *Gov't Expert Disclosure* (Nov. 13, 2024). Specifically, Dr. Zelin intends to testify to the following conclusions:

- Dr. Zelin will opine that a specific receipt received by CHS-5 appears to be a genuine ISIS receipt for money donated to the organization because of the format, the official stamp that appears on it, and text. (p. 4)

- When ISIS women escape al-Hol, they typically go to areas controlled by ISIS remnants in eastern Syria, or to areas controlled by HTS or Turkish-backed

---

[1] The disclosure letter is dated November 13, 2024, however the government emailed it to defense counsel the following day, November 14, 2024.

rebels, or to Turkey, in order to lay low and try to reestablish their connection to ISIS. (p. 9)

- [S]ome women attempt to continue producing the next generation of ISIS members; because there are no adult males in the camp, these women rape teenage boys in order to get pregnant. The ISIS women control the Annex in a similar way to American gangs controlling particular neighborhoods. (p. 8)

- Many donations to ISIS are disguised as charity, including for purposes like caring for widows and orphans. However, these donations are specifically intended for the wives and families of ISIS martyrs, a deliberate allocation that frees up money for the rest of the organization—including the fighting components—to continue operating. (p. 10)

- As of 2023, Begum remained in hiding in Syria and fundraised online for ISIS, including for ISIS-affiliated women in al-Hol. (p. 7)

In addition to his 12-page expert narrative, Dr. Zelin provided a 28-page *curriculum vitae* (CV). See Def.'s Ex. 2, *Dr. Aaron Zelin CV*. It is unclear from a review of that CV where in Mr. Zelin's background or research he derives his expertise in determining the authenticity of ISIS receipts, or where women who have escaped travel to, especially since he indicates they "lay low." It is also questionable that Dr. Zelin would have any expertise in the way gangs control particular neighborhoods in the United States.

Dr. Zelin has previously testified in other cases that he has never been to Syria, and therefore by default, he would not have ever gone to Al-Hol Internationally Displaced Persons Camp. It is unclear from his CV how Dr. Zelin's research or background would provide him expertise in women's sexual activity in the annex of the Al-hol camp in a culture that Dr. Zelin describes as vigilant about maintaining women's purity and chastity and where women can be prohibited from even showing their full faces. *See* Def.'s Ex. 1 at 6. Even if he did know about

2

women's sexual activity at Al-Hol generally, his background and research do not demonstrate an ability to have expertise in the details of sexual encounters, such as whether they were consensual or the age of the individuals.[2]

Dr. Zelin's background, publications, and research also do not appear to provide for expertise on how donations to ISIS are disguised as charity, a donor's intentions for his money, or cash tracing for allocations or "freeing up" of funds. None of his books, papers, or other publications appear to relate to international ISIS funding at all, let alone specific details of that funding. Dr. Zelin's publications are focused on humanities in areas like geopolitics, policy, propaganda, extremism, and jihadism, not financial analyses or economics of any particular organization, and certainly not cash tracing or allocation which can be conducted using a variety of methods such as: last-in, first-out (LIFO); First-in, first-out (FIFO); the pro rata rule; and the lowest intermediate balance rule (LIBR).

Finally, while Dr. Zelin's background may support expertise in knowing of Sharmina Begum's travel from the United Kingdom to Syria to join the Islamic State (particularly since it was widely publicized), his background does not establish expertise in knowing the recent, 2023 activities of Sharmina Begum who Dr. Zelin indicates is in hiding. Indeed, it is generally reported that she is in hiding

---

[2] Mr. Chhipa also objects to this testimony under Federal Rule of Evidence 403, depicting displaced women in the Al-Hol IDP camp as "rapists" is unduly prejudicial and with no probative value. It does not make a finding of whether Mr. Chhipa provided material support to a Foreign Terrorist Organization any more or less probable.

3

using a different identity.[3] There is no basis to conclude from Dr. Zelin's gathering of largely open-source research and analysis, that he would have intelligence information regarding Sharmina Begum's identity, let alone her covert activities using that other identity.

For testimony as to each of these categories described above, there is a concern about the reliability of the information being provided by Dr. Zelin. Therefore, a *Daubert* hearing is warranted. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). *Daubert* relates, not just to scientific testing or methodology, or even the expert's qualifications generally, but to the reliability of the information provided by the expert.

As the Supreme Court stated in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 138 (1999), "The *Daubert* 'gatekeeping' obligation applies not only to 'scientific' testimony, but to all expert testimony…. It is the Rule's [702] word 'knowledge,' not the words (like 'scientific') that modify that word, that establishes a standard of evidentiary reliability." A *Daubert* hearing is the Court's "gate keeping inquiry" to determine "whether particular expert testimony is reliable." *Id.* "[T]he test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it

---

[3] *See e.g.* George McMillan *Shamima Begum's former ISIS friend says she's 'just another individual living off terror benefits'* GB News (March 23, 2023) (https://www.gbnews.com/news/shamima-begum-friend-isis-bride-terror-benefits).

enjoys in respect to its ultimate reliability determination." *Id*. at 141-42 (citations omitted).

In this case, pursuant to Federal Rule of Evidence 702, *Daubert*, and *Kumho Tire*, the Court's "special obligation" to ensure that an expert's testimony "is not only relevant, but reliable" is at its peak. *Kumho Tire*, 526 U.S. at 147. Dr. Zelin has certainly researched, studied, and published on Islamic fundamentalist terrorism and the Middle East, however, testimony in the categories listed above exceed the bounds of what appear to be Dr. Zelin's expertise in this area and therefore that testimony's reliability is in question. A *Daubert* hearing is warranted.

Finally, Mr. Chhipa would just like to note for the Court that he objects to any reference to ISIS's purported "plan to blow up the Taylor Swift concert in Vienna, Austria, in the Summer of 2024" stated in the expert's disclosure (at 5). The charges in the Superseding Indictment span from 2019 to 2022, and Mr. Chhipa was incarcerated at the Alexandria Adult Detention Center in the Summer of 2024. This reference to a Taylor Swift concert in 2024 is irrelevant to the question of Mr. Chhipa's guilt or innocence on these charges, and even if it had any marginal relevance, it would be outweighed by the prejudice of referring to a popular musician whose concerts members of the jury could have attended, had plans to attend, or had family members attend. The reference to Taylor Swift is an attempt to sway the jury on emotions, and in no way makes the question of whether Mr. Chhipa provided material support to a Foreign Terrorist Organization in 2019 to

5

2022 more or less probable. Therefore, it should be excluded from the expert's testimony.

Respectfully Submitted,
MOHAMMED AZHARUDDIN CHHIPA,
By Counsel

      /s/
Jessica N. Carmichael, VSB #78339
Zachary A. Deubler, VSB #90669
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 684-7908
jessica@carmichaellegal.com
zach@carmichaellegal.com

## CERTIFICATE OF SERVICE

      I certify that on November 15, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all parties to this action.

                                                   /s/
                                    Jessica N. Carmichael